**Gary STERLING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 70829.**

Court of Criminal Appeals of Texas, En Banc.

April 22, 1992.

4.04 was replaced with Section 481.112, Texas Health and Safety Code.

Kerri K. Anderson–Donica, Corsicana, for appellant.

Patrick C. Batchelor, Dist. Atty., Corsicana, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MALONEY, Judge.

Appellant was convicted of capital murder, specifically, murder committed in the course of a robbery in Navarro County, Texas. V.T.C.A. Penal Code, § 19.03(a)(2).

The jury answered the two issues submitted to it in the affirmative and appellant was sentenced to death. Article 37.071 § 2(b) and (c) V.A.C.C.P. On direct appeal, appellant raises seven points of error. We hold that all are without merit and affirm his conviction.

Although appellant does not challenge the sufficiency of the evidence, to facilitate a better understanding of this case, we will briefly discuss the facts in the light most favorable to the verdict. The evidence presented at trial showed that in Navarro County appellant struck the deceased in the head with a bumper jack, causing his death. Appellant was also shown to have taken the deceased's automobile, cash, and wallet. Appellant later sold the automobile for cash. Appellant was arrested in connection with a separate offense in an adjoining county. While in the custody of the adjoining county authorities, appellant stated that he wanted to tell the proper authorities about a deceased person in Navarro County. Upon contacting Navarro County authorities and after being warned by a magistrate, appellant led the authorities to the location of the body of the deceased. Appellant admitted shortly thereafter in a written statement that he had killed the deceased and had taken his money, wallet and automobile.

■ In his first point of error, appellant challenges the admission into evidence of appellant's oral statements, whereby appellant directed the authorities to the deceased's body and implicated himself in the killing. Appellant claims that the oral statements were not admissible because he did not voluntarily waive his right to self-incrimination under *Faulder v. State,* 611 S.W.2d 630 (Tex.Cr.App.1979) (opinion on State's Motion for Rehearing), *cert. denied* 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980), and was not given the requisite warnings under Article 38.22 V.A.C.C.P.

Where a suspect invokes his right to remain silent in the course of interrogation, questioning must stop. *Michigan v. Mosley,* 423 U.S. 96, 101, 96 S.Ct. 321, 325, 46 L.Ed.2d 313 (1975); *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612,

16 L.Ed.2d 694 (1966); *Faulder,* 611 S.W.2d at 639. If an accused's request to discontinue questioning is not honored, a subsequent confession is inadmissible. *Faulder,* 611 S.W.2d at 639–40. In *Faulder v. State,* officers continually interrogated the suspect over a period of several hours despite the suspect's repeated objections that he wanted to wait a couple of days or hours before talking to them about the offense. *Faulder,* 611 S.W.2d at 636–38. The testimony from all of the witnesses confirmed the suspect's requests to suspend questioning. *Id.* at 635. We held that the failure of the officers to cease questioning in light of the suspect's efforts to invoke his right to remain silent was offensive to the long-standing guidelines set forth in *Miranda v. Arizona. Id.* at 640–42.

In contrast to the interrogation that took place in *Faulder,* the record here does not reflect that appellant attempted to invoke his right against self-incrimination at any time. Neither of the two officers who testified stated that appellant made any effort to assert his right to remain silent. Texas Ranger Clayton Smith testified that appellant affirmatively waived his rights prior to leading the officers to the deceased's body. Officer James Jones testified that appellant affirmatively waived his rights prior to his oral confession and prior to giving a written statement. The record does not reflect the existence of any promise, threat or coercion on the part of the officers. In the absence of evidence to the contrary, the record supports the trial court's finding that the challenged oral statements were made voluntarily. *Hughes v. State,* 562 S.W.2d 857, 863 (Tex.Cr.App.1978), *cert. denied* 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 250 (1978); *Myre v. State,* 545 S.W.2d 820, 824 (Tex.Cr.App.1977); *McKittrick v. State,* 541 S.W.2d 177, 184 (Tex.Cr.App. 1976). We are not at liberty to disturb the trial court's findings of fact where they are supported by the record. *Dunn v. State,* 721 S.W.2d 325, 336 (Tex.Cr.App.1986); *Beasley v. State,* 674 S.W.2d 762, 768 (Tex. Cr.App.1982); *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1980), *cert. denied* 454

U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981).

■ Further, the record does not support appellant's allegations that he was not properly warned by a magistrate prior to his oral statements and written confession. Both Officer Jones and Ranger Smith testified that appellant received the requisite warnings from a magistrate on the same day but prior to the time that he made his statements. Pursuant to a pre-trial hearing on appellant's motion to suppress the oral statements, the trial court found that appellant was lawfully arrested pursuant to a warrant, was duly warned of his rights in compliance with Article 38.22 V.A.C.C.P. prior to his statements, knowingly and affirmatively waived his rights and further that appellant's oral statements were voluntary and were not the result of any promise, threat or coercion on the part of the officers. The trial court's findings are supported by the record and accordingly, we will not disturb them. *Dunn.*

■ Appellant further argues that the defective oral statements vitiated his later written statement under the "fruit of the poisonous tree" doctrine, set forth in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, since appellant's arrest and custody were authorized and his statements were voluntarily made, there was no "primary taint" under *Wong Sun* which would render his written statement inadmissible. *Goodwin v. State*, 799 S.W.2d 719, 728–29 (Tex.Cr. App.1990), *cert. denied* — U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991) (where "there is no 'poisonous tree', there is no 'poisoned fruit'"). Appellant's first point of error is overruled.

■ In point of error number two, appellant claims the trial court erred in overruling his objection "to the presence of seven uniformed deputies in the courtroom." Appellant characterizes the seven officers as an "armed camp" and argues that their presence violated appellant's Sixth Amendment right to be tried by an impartial jury and interfered with appellant's presumption of innocence.[1]

Allegations of an "armed camp" were addressed by the United States Supreme Court in *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), where the defendant pointed to the presence of four uniformed and armed troopers as so inherently prejudicial that he was denied his constitutional right to a fair trial. The Court distinguished the presence of guards from a shackling scenario, stating that "while shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable." *Holbrook*, 475 U.S. at 569, 106 S.Ct. at 1346. The Court held that the visible deployment of security personnel during trial was not inherently prejudicial, but required a case-by-case analysis. The Court noted that

> [j]urors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards ... 'reason, principle, and common human experience' ... counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial."

*Holbrook*, 475 U.S. at 569, 106 S.Ct. at 1346. The Court concluded that four uniformed troopers seated quietly in the front row of the spectator section of the courtroom did not present a threat to the six defendants' right to a fair trial. *Holbrook*, 475 U.S. at 571–72, 106 S.Ct. at 1347–48.

---

1. Appellant cites *Moore v. State*, 535 S.W.2d 357 (Tex.Cr.App.1976) and *Ex Parte Clark*, 545 S.W.2d 175 (Tex.Cr.App.1977), as authority in support of his challenge to the presence of the officers. However, neither *Moore* nor *Clark* address the "armed camp" scenario. In *Moore* the accused was required to appear before the trial jury in handcuffs and jail clothing. In *Ex Parte Clark*, the accused was required to appear before members of the jury in shackles and jail clothing.

This court has also distinguished the presence of guards from a shackling scenario, concluding that the presence of guards is not "as inherently prejudicial as shackling." *Marquez v. State*, 725 S.W.2d 217, 230 (Tex.Cr.App.1987), *cert. denied* 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987) (defendant sought to suppress the introduction of a videotape at the punishment phase of trial which showed the defendant in the escort of several armed guards). We have also held that the presence of armed guards is justified when there is a threat to courtroom security. *Caraway v. State*, 550 S.W.2d 699 (Tex.Cr.App.1977); *Chappell v. State*, 519 S.W.2d 453 (Tex.Cr.App.1975). The Second Court of Appeals addressed "armed camp" allegations in *Carrasquillo v. State*, 742 S.W.2d 104 (Tex.App.—Fort Worth 1987, no pet.), where there were four officers in the courtroom, seated behind and next to the defendant. The court concluded that the presence of the officers was not of a nature "inherently lacking in due process" because "there was no showing that [the officers] caused any confusion or distracted the attention of the jurors." *Id.* at 112.

■ Since the presence of armed guards is not inherently prejudicial, appellant must show actual prejudice. *Holbrook.* Appellant does not point to any disturbance or confusion caused by the presence of the officers. The record does not reflect the location of the officers in comparison to appellant or any fact regarding their weaponry or "conspicuous nature" thereof. This court must accept the record as presented and cannot assume the existence of any circumstance or fact. Accordingly, in the absence of a showing of actual prejudice or lack of due process arising from the presence of the armed guards, we hold that the trial court did not err in overruling appellant's objections. Appellant's point of error number two is overruled.

■ In points of error three and four appellant alleges that the trial court erred by granting the State's peremptory challenges against potential jurors Gross and Robertson, both African–Americans. We will address these points jointly.

Appellant claims that both such peremptory challenges constituted a violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State articulated race neutral reasons for its strikes and the trial court ruled on the issue of discrimination; accordingly, we will not address the question of whether or not a prima facie case was established. *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Cr.App. 1992).[2] We will address the merits of appellant's claim.

We have previously discussed at length the roles of both trial and appellate courts in reviewing *Batson* challenges. *Whitsey v. State*, 796 S.W.2d 707, 721–26 (Tex.Cr. App.1989) (opinion on State's Motion for Rehearing); *Keeton v. State*, 749 S.W.2d 861, 865–70 (Tex.Cr.App.1988). In *Keeton*, we emphasized that the trial court should not accept at face value the race-neutral explanations of the State, but shall review the testimony as a whole to determine if the articulated reasons are merely given to conceal a truly racial motive. *Keeton*, 749 S.W.2d at 866–68. The focus of the trial court should be to determine whether purposeful discrimination has occurred. *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Cr.App.1991) (citing *Keeton*), *cert. denied* — U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); *Tennard v. State*, 802 S.W.2d 678, 680 (Tex.Cr.App.1990) (citing *Keeton*), *cert. denied* — U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *Keeton.* An appellate court should reverse the decision of the trial judge to excuse a juror only where his decision was "clearly erroneous". *Hill*, 827 S.W.2d 860, 865–66; *Williams*, 804 S.W.2d at 101; *Whitsey*, 796 S.W.2d at 726. In making such determination, we will consider the prospective ju-

**2.** In *Hill,* we stated that ".. the policy of this court, like that of the United States Supreme Court, is that we will not review the issue of whether the defendant established a prima facie case where the prosecutor has articulated his reasons for the challenged peremptory strike and the trial court has ruled on the ultimate question of intentional discrimination." *Hill,* 827 S.W.2d 860, 865.

ror's voir dire as a whole and accord due deference to the trial judge's ruling. *Crane v. State,* 786 S.W.2d 338, 344 (Tex. Cr.App.1990).

The State claims that venireperson Robertson's views about the "usefulness and wisdom of the death penalty" justified her exclusion. The record of her voir dire examination reflects that she expressed decided opposition in response to every question by the State concerning the death penalty and flatly stated that she did not "believe in it." She also agreed that her position against the death penalty was "set and firmly fixed." Robertson testified as follows:

Q. [Prosecutor] Then, are you telling me that your feelings are so strong that you would have to automatically vote against the death penalty in every case regardless of the facts?

A. [Robertson] Completely.

Q. Okay. Are your feelings against the death penalty so strong that you would have to answer one of those questions 'no' so that the defendant wouldn't get the death penalty if you were selected to serve on a [sic] in a capital case?

A. Yes.

Q. ....it would be impossible for you to swear that you would render your verdict solely on the law and the evidence in the case where the death penalty is involved; is that correct?

A. Yes.

Q. And is this a case where your feelings against the death penalty are so strong that they would interfere with your ability to vote to convict a person of capital murder knowing that you would have to face that decision on the death penalty if the defendant was convicted?

A. Yes.

Robertson unequivocally testified that her views on the death penalty would interfere with her ability to answer the submitted issues truthfully and render a conviction if warranted by the evidence. The record amply supports the trial court's finding that the State did not exercise purposeful discrimination in challenging veni-reperson Robertson. Such finding was not clearly erroneous.

■ Venireman Gross agreed that he would fall within the category of people who "believed in the theory of capital punishment but just didn't feel like they could serve on a jury and make that decision themselves." Gross also indicated that he might hold the state to a higher burden of proof in a capital case than he would in another type of case. During the *Batson* hearing, the prosecuting attorney testified that Gross had been prosecuted by the district attorney's office for two separate offenses. The State also had information that Gross may have been related to five or six persons, all neighbors of Gross, with the same last name, who had also been prosecuted by the district attorney's office.

In view of Gross's position on the death penalty and his potentially adverse contact with the district attorney's office, we hold that the trial court's finding that the State's challenge against venireman Gross was racially neutral and was not "clearly erroneous". *Whitsey; Williams v. State,* 804 S.W.2d at 105–107; *Tennard v. State,* 802 S.W.2d at 682; *see also Long v. State,* 823 S.W.2d 259, 266 (Tex.Cr.App.1991). Appellant's points of error three and four are overruled.

■ In his fifth point of error, appellant challenges the prosecutor's closing argument at punishment as improper because the prosecutor implied that "appellant would be paroled if [the jury] did not give him the death penalty." The State's allegedly improper argument and appellant's objection thereto, are as follows:

[Prosecutor]: ... if you don't answer those questions the way this evidence showed you they had to be answered, both of them "yes," you're going to participate with Gary Sterling in taking another life.

[Defense Counsel]: Your Honor, we object. Misrepresentation of the law and the sentences available to this jury.

The Court: Overrule the objection.

Appellant claims that the State's argument, "clearly indicated to the jury that if

they did not assess the death penalty, appellant would be paroled at some point and would take another life." Appellant also argues that the argument served "the sole purpose of injecting new and harmful facts into the trial proceedings." The State contends that appellant's objection lacked the specificity necessary to preserve error and, even if error was preserved, the argument was not improper. The State also claims that appellant raises a different ground on appeal than asserted in his objection at trial.

We will not entertain a discussion of whether appellant's objection was sufficient to preserve error because even if it was sufficiently specific, we hold that the argument complained of was proper as it was a reasonable deduction from the evidence in the record. Although counsel for the defense construed the argument to imply that appellant would be paroled if sentenced to life, we think it more likely, based upon the evidence admitted during the punishment portion of the trial, to imply that appellant would commit acts of future violence, *even in prison.*

Evidence of appellant's violent nature was admitted by the State during the punishment portion of the trial. Hill County Sheriff Brent Button testified that during appellant's incarceration at the Hill County Jail, he did substantial damage to his jail cell[3] and constructed a makeshift club from a coat hook and heavy-gauge wire from the detention light in his jail cell. Sheriff Button also testified that appellant was abusive toward detention personnel[4] and made continual threats. Sheriff Button recovered a two-page escape plan from appellant's cell. An investigator with the Hill County Sheriff's Department testified that appellant had confessed to a double homicide in Hill County and the Hill County district attorney testified that appellant

was subsequently convicted of those murders and sentenced to life imprisonment. The Hill County district attorney agreed that in his experience he had never "run across ... a more violent mass murderer than Gary Sterling". A Navarro County Sheriff's Office detention officer testified that he was assaulted by appellant during appellant's incarceration in the Navarro County Jail. In addition, the detective responsible for returning appellant to the Navarro County Jail following his trial the previous day testified that appellant had become violent while being handcuffed, striking the detective in the face and head with a loose handcuff. The detective also testified that appellant had become violent a second time in their attempt to take him to the jail. Other witnesses testified for the State, implicating appellant in unadjudicated offenses, including another murder where appellant had led authorities to the body.

There are four areas of acceptable prosecutorial jury argument:

(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument of opposing counsel; and (4) plea for law enforcement.

*Long v. State,* 823 S.W.2d 259 (Tex.Cr.App. 1991) (citations omitted). Counsel has wide latitude in drawing inferences from the evidence that are reasonable, fair, legitimate and made in good faith. *Allridge v. State,* 762 S.W.2d 146, 156 (Tex.Cr.App.1988), *cert. denied* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Cr.App.1988).

It reasonably could be deduced from the substantial evidence of appellant's propensity for violence that appellant would commit acts of future violence and constitute a continuing threat, *even to prison "society",* in the event of a life sentence.[5] Ac-

3. Sheriff Button testified that appellant removed a stainless steel seat from its bolts with his "bare hands", broke a detention glass window, removed a coathook welded to the wall, ripped a light fixture from the ceiling and destroyed "various other things" in his cell.

4. Sheriff Button and other Hill County personnel testified that appellant retained his feces and

urine in a cup and threw it at passing detention personnel.

5. We have recognized that the term "society" as used within the context of the second submitted issue includes both inmate and non-inmate populations. *Caldwell v. State,* 818 S.W.2d 790 (Tex.Cr.App.1991) (citing *Rougeau v. State* ), *cert. filed; Boyd v. State,* 811 S.W.2d 105, 118 n.

cordingly, we hold that the State's implication that appellant would commit another murder in the future did not necessarily imply that appellant would be paroled, but was a reasonable deduction that appellant would commit a murder in prison, based upon the substantial evidence of appellant's violent nature, and was not improper. Appellant's fifth point of error is overruled.

■ In his sixth point of error, appellant complains of the trial court's failure to promptly appoint an attorney.[6] Appellant was arrested on May 20, 1988. The State's complaint against appellant was executed on May 22, 1988 and the indictment for capital murder was issued on July 14, 1988. On August 9, 1988, appellant signed a pauper's oath, and counsel was appointed on October 3, 1988. Appellant states that there is no caselaw to support or refute this point of error, but urges this court to address the issue as a matter of first impression.[7]

We need not address the issue of whether the trial court erred in its allegedly delayed appointment of counsel because, even if such error was made, appellant fails to point to *any* harm resulting therefrom.[8] The United States Supreme Court has held that where the absence of counsel does not "pervade the entire proceeding", Sixth Amendment violations are subject to a harmless error analysis. *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). Here, appellant does not allege that the delay in the appointment of counsel was such that it "pervaded the entire proceeding." In fact, appellant does not point to *any* harm resulting from the failure to "promptly" appoint counsel. Arguably, the allegedly belated appointment could have adversely affected appellant's ability to fully investigate his case by delaying or rendering impossible the discovery of additional facts or witnesses. However, no claims of any such harm were made to the trial court or even alleged in this appeal.[9] We are not at liberty to presume the existence of facts not shown by the record. Accordingly, error, if any, was harmless, in the absence of any evidence to the contrary. *Peterson*, 439 S.W.2d at 842. Appellant's sixth point of error is overruled.

■ In his seventh point of error, appellant challenges Article 37.071 § 2(g) V.A.C.C.P., as unconstitutional because it "denies the jury a proper understanding of the effect of their deliberation proceedings in violation of the Fourteenth Amendment" to the United States Constitution. Specifically, appellant argues that the statute mis-

---

12 (Tex.Cr.App.1991) (citing *Rougeau v. State*), *cert. denied* — U.S. —, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991); *Rougeau v. State*, 738 S.W.2d 651, 660 (Tex.Cr.App.1987), *overruled on other grounds Harris v. State*, 784 S.W.2d 5, 19 (Tex.Cr. App.1989).

6. Appellant does not state when he believes counsel should have been appointed; he simply contends that counsel should have been "promptly appointed." Although appellant does not state the legal basis for his claim, we have assumed that he is alleging a Sixth Amendment violation.

7. Although appellant claims that this issue is one of first impression, we addressed a similar issue in *Peterson v. State*, 439 S.W.2d 841 (Tex. Cr.App.1969), where the appellant had been incarcerated for several months before counsel was appointed. In holding that the appellant had not suffered a Sixth Amendment violation, we noted that the appellant "had failed to point out how his incarceration for several months without the aid of counsel resulted in prejudice to him." *Id.* at 842. Here, appellant has also

failed to point to any harm resulting from the delayed appointment.

8. We note that appellant waived his right to counsel prior to making the oral statements implicating him in the crime and prior to his confession. Further, there is no evidence in the record that appellant ever requested the assistance of counsel until the date that he executed the pauper's oath.

9. Appellant contends that "[a]n attorney would need to begin work on the case immediately to ensure that no trails were allowed to grow cold as they well could after a five month period of time." However, he does not specifically allege facts showing that the investigation of his case was frustrated by the delay, ultimately contributing to his conviction. Appellant further alleges that "the State would have at least a five month jump on Appellant in preparing for trial, which certainly puts Appellant at a grave disadvantage", but he does not identify how he was disadvantaged. Moreover, we note that appellant moved for and was granted a continuance prior to trial.

**122**

leads the jury by failing to inform them that one "no" vote to either one of the special issues would require the trial court to sentence appellant to life rather than death. Appellant argues that the statute and the instructions given pursuant thereto lead the jury to believe that ten "no" votes are required to direct a life sentence.

This court's decision in *Davis v. State*, 782 S.W.2d 211 (Tex.Cr.App.1989), *cert. denied* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990), is directly on point.[10] In *Davis*, the appellant claimed that the jury should have been informed that their failure to agree on any of the special issues would result in the imposition of a life sentence. *Davis*, 782 S.W.2d at 221. The appellant further claimed that the failure to so inform the jury "works to 'deprive[ ] the jurors of sufficient understanding of their deliberation proceedings,'" resulting in a due process deprivation. *Id.* We held that the appellant's contentions were without merit, recognizing that

> [t]he jury in a capital murder case is responsible for answering questions the result of which will determine the life or death of an individual. Any information that is given the jury which may be interpreted by it as relieving that responsibility is considered an infraction upon the jury's fact finding function.

*Id.* (citations omitted).

Appellant fails to point to any facts or circumstances which render the statute unconstitutional as to him. Appellant fails to give any reason for this court to overturn our decision in *Davis*. Accordingly, we hold that appellant's point of error number seven is without merit and is overruled. *Id.*

Finding no reversible error, we affirm the judgment of the trial court.

---

10. Although directly on point, appellant's brief does not cite *Davis*. The only authority cited by appellant is *Justus v. Commonwealth*, 220 Va. 971, 266 S.E.2d 87 (1980). We note *Justus* is among cases cited as authority in our opinion in *Davis*. Consistent with our holding in *Davis*, *Justus* held that a jury should not be informed of the effect of it's failure to be unanimous in answering the special issues. *Justus*, 266 S.E.2d at 92.