**Elumel Eugene JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–94–00687–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 8, 1996.

Gary Polland, Houston, for appellant.

Ernest Davila, Houston, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

FOWLER, Justice.

Following a jury trial, appellant was convicted of murder.[1] The jury, finding two enhancement allegations to be true, sentenced appellant to seventy-five years in the Texas Department of Criminal Justice, Institutional Division. Appellant brings three points of error alleging: (1) the trial court erred in overruling his request for lesser included offense charges; (2) he received ineffective assistance of counsel; and (3) the prosecutor engaged in prosecutorial misconduct. We affirm.

On March 25, 1994, appellant encountered Leon Freeman near an apartment complex. Lisa Freeman, who is married to Freeman's nephew, was walking through the area when she heard the two men talking. Apparently, the discussion was about drug money. When Lisa Freeman approached the two men, Freeman was telling appellant that he did not have his money, but when he got it, he would give it to appellant. Appellant yelled that he wanted his "goddamn" money, took out a pistol, and shot Freeman in the chest. Lisa Freeman, who was approximately three to four feet away, turned and ran.

Houston Police Officer Kevin Smith and his partner, Officer Thomas Wood, were patrolling the area when a child knocked on the car window and said someone had been shot. Officer Smith got out of the car and saw Freeman's body. When he approached the

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

body, somebody pointed him toward the assailant's escape route. Ultimately, Officer Smith and a second officer apprehended appellant who still had the gun in his hand.

In his first point of error, appellant claims the trial court erred in refusing his requested jury charges on the lesser included offenses of involuntary manslaughter, aggravated assault, criminally negligent homicide, and reckless conduct.

■ There is a two-pronged test to determine whether a jury must be charged on a lesser included offense. *Navarro v. State,* 863 S.W.2d 191, 203 (Tex.App.—Austin 1993), *pet. ref'd,* 891 S.W.2d 648 (Tex.Crim.App. 1995). This test has become known as the *"Royster"* or *"Royster–Aguilar"* test. *Id.* (citing *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Royster v. State,* 622 S.W.2d 442, 447 (Tex.Crim.App.1981)). First, the lesser included offense must be included in the proof necessary to establish the offense charged. *Navarro,* 863 S.W.2d at 203. Second, there must be some evidence that if the defendant is guilty, he is guilty only of the lesser included offense. *Id.* In 1993, the Texas Court of Criminal Appeals modified the second prong to read "second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Id.* (citing *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993) (emphasis in original)). The Court of Criminal Appeals noted, however, that it was not the intent of the court to change the substantive test of *Royster,* but only to interpret and clarify existing law. *Navarro,* 863 S.W.2d at 203 (citing *Rousseau,* 855 S.W.2d at 673 n. 4).

■ When the reviewing court is asked to determine whether a lesser included offense charge should have been given, it must consider all of the evidence presented by the State and the defendant. *Havard v. State,* 800 S.W.2d 195, 216 (Tex.Crim.App.1989). Entitlement to a jury instruction on a lesser included offense must be made on a case-by-case basis according to the particular facts. *Livingston v. State,* 739 S.W.2d 311, 336

(Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

■ Appellant asked for a lesser included offense charge on involuntary manslaughter and criminally negligent homicide. Both of these offenses are lesser included offenses of murder. *Navarro,* 863 S.W.2d at 203. Thus, appellant has satisfied the first prong of the *Royster* test. We must now determine if the second prong has been met.

The distinction between murder, involuntary manslaughter, and criminally negligent homicide lies in the culpable mental state accompanying the defendant's act. *Id.* at 204. *See also* Tex.Penal Code Ann. §§ 19.02, 19.05, and 19.07 (Vernon 1989) (culpable mental state for murder is "intentional" or "knowing;" culpable mental state for involuntary manslaughter is "recklessness;" culpable mental state for criminally negligent homicide is "negligence").

■ Section 19.07(a) of the Texas Penal Code provides that "[a] person commits an offense if he causes the death of an individual by criminal negligence." Tex.Penal Code Ann. § 19.07(a) (Vernon 1989). Section 6.03(d) of the Code defines criminally negligent conduct and states:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances and viewed from the actor's standpoint.

Tex.Penal Code Ann. § 6.03(d) (Vernon 1974). In other words, an actor is criminally negligent if he should have been aware of the risk surrounding his conduct, but failed to perceive it. *Navarro,* 863 S.W.2d at 204.

■ Appellant requested an instruction on criminally negligent homicide based on his testimony that he knew Freeman often carried a gun, and he saw something "silver" in Freeman's hand. He also testified that

Freeman cursed at him, grabbed him by the collar, and slapped him so that some of his teeth were knocked loose. Appellant claimed he was afraid Freeman would kill him. In other words, appellant claimed he shot Freeman in self-defense.[2] He also testified that he did not intend to kill Freeman, he was "just intending to get him off of me." However, when determining whether appellant is entitled to a lesser included offense charge on criminally negligent homicide, we must look at all of the evidence. *See Havard,* 800 S.W.2d at 216.

Lisa Freeman testified that she saw appellant take out a gun and shoot Freeman at close range. She stated that Freeman did not make any moves toward appellant. Appellant testified that he routinely carried an unloaded gun. He stated that when Freeman slapped him, he loaded a clip into the gun and shot him because he was "scared" of him.

■ In *Thomas v. State,* 699 S.W.2d 845, 849 (Tex.Crim.App.1985), the defendant requested an instruction on criminally negligent homicide based on his testimony that he did not intend to shoot the victim, that it was an accident, and that he shot the victim in self-defense. The court held that the defendant did not meet the second prong of the *Royster* test because his testimony did not show that he possessed the requisite culpable mental state so that if guilty, he was guilty only of criminally negligent homicide. *Id.* at 852. The court reasoned:

> Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards that risk.

*Id.* at 850.

■ Additionally, in *Navarro,* the court noted that the question in determining whether a homicide was criminal was whether the act was voluntary or involuntary, not whether the homicide was intentional or not. *Navarro,* 863 S.W.2d at 204–05. In this case, appellant was familiar with the gun and knew it was loaded. In fact, he loaded it just

before he shot Freeman. He deliberately pointed the gun at Freeman and pulled the trigger "to get him off of me." These were voluntary actions. The thrust of appellant's defense, demonstrated through his own testimony, was self-defense, not an unawareness of risk in exhibiting a loaded gun under the circumstances. Appellant testified he was afraid of Freeman, knew he carried gun, and that he was reacting to an assault by Freeman. This evidence does not raise the issue of criminally negligent homicide; therefore, the trial court did not err in refusing to give appellant's requested charge.

Appellant also requested a charge on involuntary manslaughter. A person commits involuntary manslaughter if he "recklessly causes the death of an individual." TEX.PENAL CODE ANN. § 19.05(a)(1) (Vernon 1989). Section 6.03(c) of the Penal Code provides:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1974).

. As already stated, involuntary manslaughter is a lesser included offense of murder, and thus, appellant has satisfied the first prong of the *Royster* test. *See Navarro,* 863 S.W.2d at 203.

■ The specific intent to kill is not an element of the offense of involuntary manslaughter. *Id.* at 205. "Recklessness" is satisfied by evidence showing that the defendant consciously disregarded a known substantial and unjustifiable risk that serious bodily injury would occur; a risk that if disregarded constitutes a gross deviation from the standard of care an ordinary person would exercise under the same circumstances. *Id.* (citing *Hayes v. State,* 728

---

2. The jury was instructed on the issue of self- defense.

S.W.2d 804, 809 (Tex.Crim.App.1987)). Here, the record does not reflect that appellant is guilty **only** of consciously disregarding a known substantial and unjustifiable risk that serious bodily injury would result. Appellant's claim that he did not intend to kill Freeman raises an issue as to his culpable mental state only if it is taken alone and out of context. The statement loses force when the evidence, including other statements by appellant, is viewed as a whole. A statement that a defendant did not intend to kill the victim cannot be "plucked out of the record and examined in a vacuum." *Navarro,* 863 S.W.2d at 205 (citing *Godsey v. State,* 719 S.W.2d 578, 584 (Tex.Crim.App.1986)). Appellant's statement, when viewed along with the other evidence, is not evidence that would permit a jury rationally to find that if he is guilty, he is guilty only of involuntary manslaughter. *See Rousseau,* 855 S.W.2d at 672–73.

▉ The other evidence at trial showed the following. Lisa Freeman testified that appellant demanded his money and when he did not get it, he pulled out a gun and shot Freeman. Appellant testified that he habitually carried a gun. He claimed that Freeman was known to carry a gun and that night, appellant saw something "silver" in Freeman's hand. He stated that he took five to seven seconds to load the gun, then shot Freeman. Appellant testified numerous times that he was in fear for his life; that he was afraid. Though appellant testified that he shot Freeman only to make Freeman get "off of him," this is not testimony that appellant's actions were anything other than deliberate. Moreover, appellant did not attempt to get help for Freeman or try to help Freeman himself; instead appellant fled the scene. Thus, the evidence as a whole does not support a rational inference that appellant was consciously disregarding the risk of death; rather, the evidence shows a deliberate, voluntary act by appellant, albeit in self-defense if appellant is to be believed. The trial court did not err in refusing to instruct the jury on the lesser included offense of involuntary manslaughter.

Appellant also requested a charge on reckless conduct. A person commits the offense of reckless conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. TEX.PENAL CODE ANN. § 22.05(a) (Vernon 1989). The definition of "recklessly" entails an actor being aware of, but consciously disregarding, a substantial and unjustifiable risk that a result will occur. Recklessness and danger are presumed if the actor knowingly pointed a firearm at, or in the direction of, another. TEX.PENAL CODE ANN. § 22.05(b) (Vernon 1989). It is irrelevant whether or not the actor believed the firearm to be loaded. *Id.*

▉ Examination of the record, as demonstrated by the evidence detailed above, reveals that appellant's strategy at trial was to justify his act of shooting Freeman by relying upon his testimony that he fired because he was in fear for his own life, i.e., self-defense. Regardless of the veracity of appellant's theory, which was rejected by the jury, the consequence of appellant's intentional act of shooting Freeman went well beyond the mere act of placing another in imminent danger of serious bodily injury. *See Mock v. State,* 848 S.W.2d 215, 219 (Tex.App.—El Paso 1992, pet. ref'd). Appellant did not say that the actual discharge of the gun was accidental; in fact, he said he deliberately fired the gun. One cannot accidentally or recklessly act in self-defense. *Mock,* 848 S.W.2d at 219. The evidence clearly illustrates that appellant's intentional act of shooting Freeman, allegedly to protect himself, went beyond reckless conduct. *Id.* Consequently, the record wholly fails to establish that appellant, if guilty, was guilty only of reckless conduct. As stated above, the statement by appellant that he did not intend to kill Freeman cannot be taken in a vacuum. That statement alone does not necessarily require an instruction on reckless conduct. *See Godsey v. State,* 719 S.W.2d 578, 584 (Tex.Crim.App.1986) *(en banc ).* Moreover, cases in which the Court of Criminal Appeals has found that an instruction on reckless conduct was required involved defendants whose guns had accidentally discharged or who testified that their guns accidentally discharged. *See, e.g., Hayes v. State,* 728 S.W.2d 804, 809–10 (Tex.Crim.App. 1987); *Thomas v. State,* 699 S.W.2d 845, 850

(Tex.Crim.App.1985). In sum, the context of all of the evidence shows that appellant claimed he was acting in self-defense, and acted deliberately in shooting at Freeman from close range. Thus, the trial court did not err in refusing appellant's requested charge on reckless conduct.

Appellant also requested an instruction on the offense of aggravated assault. Under *Royster*, the lesser included offense must be included in the proof necessary to establish the offense charged. *Navarro*, 863 S.W.2d at 203. Under the facts of this case, aggravated assault was included in the proof necessary to establish murder. Thus, appellant has satisfied the first prong of *Royster*. Now we must decide if he has satisfied the second prong.

Section 22.02(a) of the penal code provides that a person commits aggravated assault if he commits assault as defined in section 22.01 and uses a deadly weapon. TEX.PENAL CODE ANN. § 22.02(a)(4) (Vernon 1989). A person commits assault if he intentionally, knowingly, or recklessly causes serious bodily injury to another. TEX.PENAL CODE ANN. § 22.01(a)(1). Thus, if a person intentionally, knowingly, or recklessly causes serious bodily injury to another person and uses a deadly weapon in doing so, he has committed an aggravated assault.

 A charge on the offense of aggravated assault would be required only if there was testimony indicating a lack of intent on the part of appellant to kill the deceased. *Lawson v. State*, 775 S.W.2d 495, 499 (Tex.App.—Austin 1989, pet. ref'd). As we stated in our discussion on reckless conduct, appellant's self-defense testimony shows a deliberate intent to kill Freeman. Appellant's actions, if his testimony is taken as true, progressed step by step toward the firing of the gun. An appellant who presents evidence which merely seeks to justify his actions on his right to defend himself does not raise the issue of intent to accomplish any act less than the death of the victim. *Williams v. State*, 749 S.W.2d 183, 185 (Tex.App.—San Antonio 1988, pet. ref'd) (citing *Robinson v. State*, 630 S.W.2d 394, 399 (Tex.App.—San Antonio 1982, pet. ref'd)). As appellant was clearly claiming

self-defense, he was not entitled to a charge on aggravated assault. *Williams*, 749 S.W.2d at 185.

We hold that based on the evidence in the record, particularly appellant's testimony, appellant was not entitled to any of the requested charges on lesser included offenses. Appellant's first point of error is overruled.

In his third point of error, appellant claims he was denied due process based on prosecutorial misconduct. Specifically, he complains that the prosecutor's closing arguments concerning the short time convicts spend in prison and the reference to the death penalty were improper.

 Jury argument must fall within one of four permissible general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to the argument of opposing counsel; and (4) pleas for law enforcement. *Sterling v. State*, 830 S.W.2d 114, 120 (Tex.Crim.App.1992).

 During closing argument, the prosecutor mentioned numerous convictions of the victim, Leon Freeman, and gave the dates for those convictions. After that, he stated:

> Now, even with as short a time as they've been keeping our convicts in prison, how is he [Leon Freeman] running out in those Lincoln Park Apartments slapping people, showing people guns?
>
> \* \* \* \* \* \*
>
> Now, did he escape from prison or has he got some double? Who was this person running around threatening people with guns? He couldn't have been out—I suggest to you—for more than a few weeks or a couple of months, at best, before he was killed. Even as short as they're keeping these people in prison—because he received a 10 year sentence only about a year and a half before he was killed.

These statements made by the prosecutor were in response to the claim of self-defense made by appellant. Appellant testified Leon Freeman was a crack dealer who was "known" to carry a gun. He also stated that Leon Freeman was a "gangster." The prosecutor was attempting to show that Leon

Freeman had been in prison for most of the recent past and thus he could not have earned much of a reputation as a dealer or a "known" gun carrier. This was the key point of the argument. The prosecutor was not attempting to focus the jury on the idea of parole or short prison terms. He was simply arguing that Leon Freeman had not been around long enough to have the dangerous reputation as suggested by appellant. Thus, the prosecutor's statements were summations of the evidence and reasonable deductions therefrom.

As to the prosecutor's reference to the death penalty, that remark was only made in the context that as jurors, if they were asked to explain the verdict and sentence to someone in the community, they could explain that even though it was a murder case, they could not assess the harshest punishment, the death penalty, because it was not a death penalty case. The prosecutor's argument was clearly geared toward urging the jurors to assess the maximum punishment allowed by law for a murder case that did not involve the death penalty. The argument was merely a plea for law enforcement, and thus, it was a permissible area of argument. *See Sterling v. State*, 830 S.W.2d 114, 121 (Tex.Crim.App.1992) (holding that a plea for law enforcement is a permissible area of prosecutorial jury argument).

In point of error two, appellant claimed he was denied due process based on ineffective assistance of counsel. The standard for reviewing ineffective assistance of counsel claims involves the application of a two-pronged test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *McFarland v. State*, 845 S.W.2d 824, 842 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). First appellant must show that counsel's representation was deficient and not reasonably effective. *Id.* Second, he must demonstrate that the deficient performance prejudiced his defense. *Id.* In other words, appellant must show that: (1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's

deficient performance, the result of the proceeding would have been different, with that "reasonable probability" being a probability sufficient to undermine confidence in the final outcome. *McFarland*, 845 S.W.2d at 842–43.

The *Strickland* standard has never been interpreted to mean that an accused is entitled to perfect or errorless representation. *Id.* at 843. Isolated instances of error do not render counsel's performance ineffective, nor can an ineffective assistance of counsel claim be established by isolating for examination one portion of counsel's performance. *Id.* Counsel's performance must be judged by the totality of the representation. *Id.* Judicial scrutiny of counsel's performance must be highly deferential. *Id.* Thus, the reviewing court must determine whether counsel's errors were so serious that counsel was not functioning in a manner envisioned by the Sixth Amendment. *Id.* The burden is on the appellant to demonstrate that his counsel did not render effective assistance of counsel. *Id.* The appellant must prove his claim by a preponderance of the evidence. *Id.*

Appellant first complains his counsel was ineffective because he failed to follow through and pursue the appearance of a defense witness, Ken Hunter. He contends counsel should have sought a delay, or at the very least, put Hunter's expected testimony on the record.

The record reflects that appellant's counsel called Ken Hunter; however, he was not present to testify. Later, there was a discussion on the record concerning Hunter's absence. The court noted that the process server had not been able to locate Hunter. Appellant's counsel responded that he was not going to ask for a continuance "based on my knowledge of what the witness is going to say." The record before this court does not reflect what Hunter's testimony would have been; however, it appears from the record that appellant's counsel did not consider Hunter's testimony necessary or of any great help to the defense.

An assertion of ineffective assistance of counsel will be sustained only if the record affirmatively supports such a claim. *Huynh v. State*, 833 S.W.2d 636, 638 (Tex. App.—Houston [14th Dist.] 1992, no pet.). The record shows that appellant's counsel knew what Hunter would say, and found it unnecessary to pursue his attendance. Absent a showing that a potential defense witness would have benefitted the defense, counsel's failure to call that witness is of no moment. *Simms v. State*, 848 S.W.2d 754, 758 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). We hold counsel was not ineffective for failing to secure the testimony of Ken Hunter.

Appellant also claims his counsel was ineffective because he failed to object to the prosecutor's closing arguments about the short time convicts spend in prison, and the reference to the death penalty. Based on our holding and discussion in point of error three, there was no need for appellant's counsel to object because the prosecutor's arguments were proper. Appellant was not denied effective assistance of counsel, and his second point of error is overruled.

The judgment of the trial court is affirmed.