

# NUMBER 13-24-00658-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

WILLIAM GARCIA,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## ON APPEAL FROM THE 370TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West**
**Memorandum Opinion by Chief Justice Tijerina**

Appellant William Garcia was convicted of the first-degree offenses of capital murder and murder for the killing of Y.M., a child under ten years old.[1] *See* TEX. PENAL

---

[1] To protect the victim's identity in this case, we will use an alias. *See* TEX. R. APP. P. 9.8 cmt., 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

CODE §§ 19.03(a)(8), 19.02(c). He was sentenced to life in prison for capital murder and fifty years' imprisonment for murder. By three issues, which we have reorganized and renumbered, appellant contends that (1) the judgment violates double jeopardy, (2) he was entitled to an instruction on the lesser-included offense of manslaughter, and (3) the trial court should have suppressed evidence found on his cell phone. We vacate in part, modify the judgment, and affirm as modified.

## I. DOUBLE JEOPARDY

By his first issue, appellant complains that the convictions of capital murder and murder against the same victim violate his right against double jeopardy. The State concedes a double jeopardy violation requires that we vacate the murder conviction.

It is well-settled that pursuant to the Fifth Amendment, multiple punishments for the same offense violate double jeopardy principles. *Whalen v. United States*, 445 U.S. 684, 688 (1980) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)); *Gonzales v. State*, 304 S.W.3d 838, 845 (Tex. Crim. App. 2010); *see* U.S. CONST. amends. V, XIV. Two offenses may be the same if one offense stands in relation to the other as a lesser-included offense. *Littrell v. State*, 271 S.W.3d 273, 275–76 (Tex. Crim. App. 2008).

A person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1). A person commits capital murder if he intentionally commits the murder and kills an individual under ten years old. *Id.* § 19.03(a)(8). Thus, for jeopardy purposes, in this case, murder was a lesser-included offense of capital murder because it could be established by proof of the same or less than all the facts required to establish the commission of capital murder. *See* TEX. CODE CRIM. PROC. art. 37.09(1); *see also Young v. State*, 283 S.W.3d 854, 875–76 (Tex. Crim.

2

App. 2009) (noting the Texas Court of Criminal Appeals has held that murder is a lesser-included offense of capital murder); *Berger v. State*, 104 S.W.3d 199, 205 (Tex. App.—Austin 2003, no pet.) ("When the same act or transaction violates two different penal statutes, the two offenses are the same for double-jeopardy purposes if one of the offenses contains *all* the elements of the other."). Accordingly, we agree that appellant was subjected to multiple punishments for the same conduct in this case.

The remedy for a violation of double jeopardy due to multiple punishments for the same conduct is to affirm the conviction for the most serious offense and vacate the other convictions. *Bigon v. State*, 252 S.W.3d 360, 372–73 (Tex. Crim. App. 2008). The offense that has the greatest sentence assessed is the most serious. *Id.* Here, appellant received a fifty-year sentence for the murder conviction and life imprisonment for the capital murder. Thus, the more serious offense in this case is capital murder. *See id.* We sustain appellant's first issue and vacate the murder conviction.

## II. JURY CHARGE

By his second issue, appellant contends that he was entitled to a jury instruction on the lesser-included offense of manslaughter.

### A. Applicable Law and Standard of Review

"There is a two-pronged test to determine whether a jury must be charged on a lesser included offense":

    (1)    the requested charge is for a lesser-included offense of the charged offense; and

    (2)    there is some evidence that, if the defendant is guilty, he is guilty only of the lesser offense.

*Johnson v. State*, 915 S.W.2d 653, 657 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd);

3

*see also Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006).

Under the first prong, manslaughter is a lesser-included offense of capital murder.[2] *Moore v. State*, 969 S.W.2d 4, 9–10 (Tex. Crim. App. 1998); *Yanez v. State*, 199 S.W.3d 293, 309 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd). Therefore, because appellant only prevails if prong two is satisfied, we must analyze it. *See Guzman*, 188 S.W.3d at 188; *see also Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023) (explaining that the appellant prevails only if both prongs are satisfied).

Under the second prong, "we must consider whether there was some evidence raised at trial from which a rational jury could acquit" appellant of capital murder and convict him of the lesser-included offense of manslaughter. *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). We review all the evidence "without regard to the evidence's credibility or potential contradictions or conflicts." *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017); *Yanez*, 199 S.W.3d at 310. "An instruction on a lesser-included offense is required only when there is some admitted evidence directly germane to that offense." *Roy*, 509 S.W.3d at 317. "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 382 S.W.3d at 385. "However, if a defendant either offers evidence that he committed no offense or presents no evidence, and there is no evidence showing he is guilty only of a lesser included offense, then a charge on a lesser included offense is not required." *Yanez*, 199 S.W.3d at 310.

---

[2] Having vacated the murder conviction, we will only compare the offense of capital murder with the lesser included offense of manslaughter.

**B. Pertinent Facts**

The record supports the following facts. Osiel Balderas, Y.M.'s uncle, was fourteen years old at the time of the shooting and lived with Y.M.'s mother, Y.M., and Y.M.'s stepfather, Esteban Ybarra. Balderas stated that Marco Chairez drove past the residence, and they argued. Balderas stated that Chairez said, "I'm gonna call some people." Balderas had seen Chairez with Juan Arias, a neighbor who disliked Ybarra. Balderas stated that prior to Y.M.'s death, Arias's cousin had shot at his residence in "a drive-by." Evidence was presented that Y.M.'s mother called Ybarra on the date of the shooting and said she had an "altercation with . . . Arias," who threatened to kill the family.

After hearing about the encounter with Chairez, Ybarra retrieved a gun. Approximately twenty minutes later, Balderas and Ybarra were outside, and Chairez and others, including appellant, arrived at the residence in several vehicles. Chairez, who was holding an "AK" firearm, exited the vehicle and said, "You think you're big shit. Now we're gonna find out who is the big shit here." Several men with guns, including appellant, who had an assault rifle, began shooting at the residence. Appellant shot his weapon multiple times. There is conflicting evidence regarding whether Ybarra shot his weapon first, but it is undisputed that he shot at the men. The trial court admitted a video of the shooting.[3] Ybarra testified that before the shooting began, he said, "Hey, [h]old on. I got my family here" after which "he [Chairez] just started shooting." Balderas testified that the men shot several rounds at the residence, and the shooting lasted "for a while." After the shooting

---

[3] According to Javier Vargas, a sergeant with the Hidalgo County Sheriff's Office, a video shows that appellant shot at Y.M.'s residence.

5

ended, the men left. Y.M. had been shot in the head and died.[4]

The prosecutor asked Juan Roman Olaguez Garcia, an admitted participant in the shooting, why the men went to Y.M.'s residence. Olaguez said, "[Chairez] had a problem with an individual from that home, and he was gonna go fight with him." The prosecutor asked, "[W]hat was he gonna use to go fight with him?" Olaguez replied, "He had firearms." The prosecutor asked, "So the intention was to go there and fire upon the residence of their home?" Olaguez said, "With the person that he had a problem with."[5]

At trial, appellant's theory of the case was that Ybarra fired the first shot. Therefore, he and his codefendants acted in self-defense. Appellant claimed that he and the men "responded to a shootout." Appellant did not present evidence that he acted recklessly. Additionally, when he objected to the jury charge and offered his proposed charge on the lesser-included offense of manslaughter, appellant did not point to any affirmative evidence that would support the finding that appellant only committed manslaughter. The trial court denied his requested instruction on manslaughter.

## C.    Analysis

Appellant asserts that a rational jury could have found that, if he was guilty of anything, he was only guilty of the lesser-included offense of manslaughter. Specifically, appellant argues: "In short, [appellant] was reckless in going to the fight of another while having firearms present. Then gunfire initiated by an occupant of the home prompted

---

[4] Balderas testified that he was traumatized by seeing Y.M. deceased with blood exiting the wound in her head, and that he "felt guilt" because he "[could not] believe some grown man would take it to the heart whenever a 14-year-old flipped them off." Chairez was forty-two years old when the incident occurred.

[5] When Chairez was arrested, the officers located him hiding in the ceiling of the building.

6

return fire. All of which recklessly led to an unseen occupant of the house being struck and killed." This is the extent of his argument.

The distinction between capital murder and manslaughter is the culpable mental states. *Johnson*, 915 S.W.2d at 657. Appellant committed the offense of murder if he intentionally or knowingly caused the death of an individual. TEX. PENAL CODE § 22.01. The intent to cause the individual's death is not an element of manslaughter, which requires that the defendant have a reckless mental state. *Johnson*, 915 S.W.2d at 657. To establish a reckless mental state there must be "evidence showing that the defendant consciously disregarded a known substantial and unjustifiable risk that serious bodily injury would occur; a risk that if disregarded constitutes a gross deviation from the standard of care an ordinary person would exercise under the same circumstances." *Id.* at 658.

The evidence at trial established that appellant intentionally or knowingly aimed his gun and shot at Y.M.'s residence multiple times in retaliation for Balderas's confrontation with Chairez. The evidence as a whole does not support a rational inference that appellant was consciously disregarding the risk of death. *See id.* Instead, the evidence shows a deliberate and voluntary act by appellant. *See id.* (determining that the evidence supported deliberate conduct and not recklessness when the appellant shot his weapon at the victim even though evidence was presented that the appellant may have acted in self-defense). Therefore, we are unable to conclude that appellant's actions were merely reckless, and evidence that appellant shot at the residence, even assuming Ybarra fired first, would have precluded a rational jury from finding him guilty only of manslaughter. *See id.* at 659; *see also Martinez v. State*, 16 S.W.3d 845, 848 (Tex.

7

App.—Houston [1st Dist.] 2000, pet. ref'd) ("The commission of an act clearly dangerous to human life suffices to support a conviction for murder under section 19.02(b)(2) of the Texas Penal Code and is not an accidental or reckless act. . . . Furthermore, one cannot accidentally or recklessly act in self-defense."); *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986) (explaining that in determining whether the evidence supports a finding of recklessness, even a statement that a defendant did not intend to kill the victim "cannot be plucked out of the record and examined in a vacuum"); *Benavides v. State*, No. 08-07-00193-CR, 2009 WL 3031175, at *1 (Tex. App.—El Paso Sep. 23, 2009, pet. ref'd) (not designated for publication) (concluding that the defendant was not entitled to an instruction for deadly conduct as a lesser-included offense of aggravated assault because the evidence established that the defendant intentionally pointed the gun at the victim). Accordingly, appellant was not entitled to an instruction on the lesser-included offense of manslaughter; and the trial court did not abuse its discretion by refusing to instruct accordingly. *See Guzman*, 188 S.W.3d at 188; *Dixon v. State*, 358 S.W.3d 250, 259 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (explaining that the defendant had not testified "about any lack of intent to strike [the complainant], nor does any evidence from any source show he lacked the intentional or knowing mental state" and that "[i]nstead, the only evidence shows he argued with [the complainant] and chased her in his truck while she ran away screaming, narrowly missing her as she rolled out of the way into a hole under a house that he struck"); *see also Stephenson v. State*, No. 04-22-00031-CR, 2023 WL 4337711, at *5–6 (Tex. App.—San Antonio July 5, 2023, no pet. filed.) (mem. op., not designated for publication) (relying on *Dixon*, 358 S.W.3d at 258, and overruling the appellant's complaint that the trial court should have provided the

8

lesser-included offense instruction for reckless conduct because "there is no evidence that [the appellant] lacked the intentional or knowing mental state; and, when viewed in the context of the entire record, the statements that [the appellant] highlights do not negate intent"); *Benavides*, 2009 WL 3031175, at \*1 (concluding that the appellant acted intentionally and was not entitled to an instruction on deadly conduct because the evidence showed that the appellant pointed a gun at the victim in order for the victim to let him go and leave him alone and then pointed the gun at the victim again to scare the victim away). We overrule appellant's second issue.[6]

### III.    MOTION TO SUPPRESS

By his third issue, appellant contends that the trial court improperly denied his motion to suppress the search and seizure of his cell phone and its contents. The State responds that the argument at trial does not comport with appellant's argument on appeal, and even assuming error, no reversible harm is shown. Appellant does not point to the evidence that the trial court improperly admitted, and he does not explain in his brief how the evidence, which he does not discuss, was harmful.

### A.    Standard of Review

We review a trial court's ruling on a motion to suppress for abuse of discretion, *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010), employing a bifurcated standard of review. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc)

---

[6] We note that at the charge conference, appellant pointed to no evidence that negated capital murder or supported a finding that he merely acted recklessly. *See Williams v. State*, 662 S.W.3d 452, 463 (Tex. Crim. App. 2021) ("Because the evidence supporting [the lesser-included offense] as a rational alternative to the charged offense was not obvious, and [a]ppellant failed to point to it, the trial court, reversed on appeal, was classically 'sand-bagged.'"). On appeal, he does not point to any evidence that negates capital murder or supports a finding that he merely acted recklessly. *See* TEX. R. APP. P. 38.1(i).

9

(citing *Guzman v. State*, 955 S.W.2d 85, 88 (Tex. Crim. App. 1997) (en banc)). We give almost total deference to the trial court's findings of historical fact that are supported by the record, to mixed questions of law, and to facts that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id*. (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89.

We must uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). We review the erroneous admission of evidence obtained in violation of the Fourth Amendment under "Rule 44.2(a)'s constitutional standard." *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001); *Flowers v. State*, 438 S.W.3d 96, 110 (Tex. App.—Texarkana 2014, pet. ref'd); *see also* TEX. R. APP. P. 44.2. Rule 44.2 states, "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2; *see also Hernandez*, 60 S.W.3d at 108 (reversing the judgment of the court of appeals that found that the trial court's erroneous admission of evidence obtained in violation of the Fourth Amendment was subject to non-constitutional error harm analysis and remanding for a harm analysis pursuant to Rule 44.2(a)); *Flowers*, 438 S.W. 3d at 110, 112 ("After careful consideration of the above factors, we are able to conclude, beyond a reasonable doubt, that any error in admission of the cell phone call list was harmless."). "The Texas Court of Criminal

10

Appeals has prescribed several nonexclusive factors to be considered when conducting a harm analysis under Rule 44.2(a), including (1) the nature of the error, (2) the extent the error was emphasized by the State, (3) the weight a juror would probably place on the error, and (4) the error's probable collateral consequences. *Flowers*, 438 S.W.3d at 110 (citing *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011)).

**B.      Discussion**

We agree with the State that appellant has failed to show that he was harmed by the trial court's denial of his motion to suppress. Thus, because appellant cannot show reversible error, we need not address whether the trial court erred in denying appellant's motion to suppress. First, appellant has not cited any evidence that should have been suppressed, and we are not allowed to make appellant's argument for him. *See* TEX. R. APP. P. 38.1(i); *see also Adell v. State*, No. 01-21-00439-CR, 2023 WL 4938111, at *40 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, pet. ref'd) (mem. op., not designated for publication) (explaining that appellant waived his challenge to the denial of his motion to suppress because he failed to explain whether or how the admission of evidence obtained in violation of the Fourth Amendment contributed to his conviction or punishment).

Appellant points to nothing in this voluminous record for us to review for a harm analysis. *See* TEX. R. APP. P. 38.1(i); *see also Adell*, 2023 WL 4938111, at *40. Nonetheless, in this case, the State did not rely on circumstantial evidence to prove appellant's guilt. Instead, the State presented direct evidence of appellant's guilt, and appellant claimed that he acted in self-defense when he shot his gun.[7] Therefore, the

---

[7] The State describes the evidence taken from appellant's phone as consisting of text messages

11

nature of the error, if any, of admitting the information from appellant's phone was inconsequential, and even if the State emphasized any circumstantial evidence of appellant's guilt taken from his cell phone records, there is direct evidence of appellant's guilt, and appellant claimed that he acted in self-defense. It is highly unlikely that the jury put much weight on anything that may have been revealed in appellant's cell phone records after viewing the video showing appellant shooting his gun at Y.M.'s home and hearing appellant argue that he shot at the house in self-defense. *See Clay v. State*, 240 S.W.3d 895, 905–06 (Tex. Crim. App. 2007) ("The erroneously admitted evidence established little, if anything, negative about appellant that was not also well established by the properly admitted evidence."). Finally, appellant has not revealed any collateral consequences to admission of the contents of appellant's phone. Therefore, after careful consideration of the four factors, we conclude, beyond a reasonable doubt, that error, if any, in admission of the text messages or any phone contents was harmless. See *Flowers*, 438 S.W.3d at 110. We overrule appellant's third issue.

## IV.    CONCLUSION

Because it violates the Double Jeopardy Clause of the Fifth Amendment as

---

showing that appellant planned to travel after the shooting and that he researched news of Y.M.'s murder. The fact that an appellant fled from the scene of a crime is circumstantial evidence that allows an inference of a guilty conscience. *Clay v. State*, 240 S.W.3d 895, 905 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt."); *Clayton v. State*, 493 S.W.2d 526, 528 (Tex. Crim. App. 1973) ("Though flight of an accused is not ground for presuming guilt, it is still a circumstance from which an inference of guilt may be drawn."). And evidence that the defendant conducted research of the crime allows a reasonable inference that the defendant had a guilty conscience. *Hance v. State*, 714 S.W.3d 775, 816 (Tex. App.—Fort Worth 2025, no pet.) (stating that "a consciousness of guilt may be one of the strongest indicators of guilt" and explaining that evidence that the appellant's research of "the signs and prevalence of the very act of which he was accused" supported "a reasonable inference that [the appellant] was seeking information either to prepare for or to cover up [the victim]'s sexual assault, or both" and was "highly probative of his intent under the circumstances"). This evidence is no more negative than the direct evidence presented.

12

previously discussed, we vacate the conviction for murder and modify the trial court's judgment to so reflect. As modified, the judgment of the trial court is affirmed.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
28th day of May, 2026.