**Rolland E. LAWSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 3-87-028-CR.

Court of Appeals of Texas,
Austin.

Aug. 9, 1989.
Discretionary Review Refused
Nov. 1, 1989.

Walter C. Prentice, Austin, for appellant.

Ronald Earle, Dist. Atty., Terrence Keel, James C. Doty, Asst. Dist. Attys., Austin, for the State.

Before SHANNON, CARROLL and ABOUSSIE, JJ.

## ON MOTION FOR REHEARING

CARROLL, Justice.

The opinion of the Court in this cause handed down on June 14, 1989, is withdrawn and the following opinion is substituted therefor.

The trial court charged the jury on murder, voluntary manslaughter, and involuntary manslaughter, as well as self-defense. However, the trial court refused Lawson's requested charges on aggravated assault and criminally negligent homicide, and overruled his *Cobarrubio* objection to the charge on murder.

The jury convicted Lawson of murder and assessed his punishment at 99 years confinement. Tex.Pen.Code Ann. § 19.02(a)(1) (1981). We have determined that the trial court erred in refusing Lawson's requested jury charge on a lesser included offense and in its charge to the jury on murder, so we must reverse the judgment of the trial court and remand the cause for new trial.

## BACKGROUND

This case presents a chilling picture of greed, violence, and death. On June 6, 1986, Lawson and Leroy Pollock were together on Lake Travis when the boat "caught" fire. At that time, Lawson claimed that Pollock had spilled gasoline while changing fuel tanks and that he and Pollock jumped overboard because of the fire. Lawson then personally directed a search of the area, and explained his cover story in great detail.

Seventeen days later, Pollock's body floated to the surface of Lake Travis, and Lawson's scheme began to unravel. The body had an anchor and a heavy limestone rock tied around it, and authorities discovered a gun shot wound to the head.

Lawson, Pollock and another man were business partners. Lawson was executive vice-president and general sales manager of the company and his wife was the company bookkeeper. At trial, the State introduced evidence that the company was some $160,000 "out of trust" with its supplier and was the beneficiary on a $200,000 life insurance policy on Pollock's life.

Lawson testified in his own behalf. He admitted that he shot Pollock, burned the boat and staged the drowning to cover up the killing, but claimed the killing was an accident. According to Lawson, the men argued, Pollock threatened him with a pistol, and during the fight for the gun, Pollock grabbed Lawson's testicles. Lawson testified that "the man was causing me more pain than I ever had in my life" and that "I had to stop him from hurting me."

He admitted that he "jabbed," "smacked," and "pounded" Pollock with the loaded pistol, but claimed that he was "very desperate" and "wasn't trying to harm him." Of course, the pistol discharged, killing Pollock.

## DISCUSSION

Lawson asserts the trial court erred in (1) overruling his *Cobarrubio* objection to the charge for murder, (2) overruling his requested charges on the lesser included offenses of aggravated assault and criminally negligent homicide, (3) overruling various evidentiary objections, and (4) overruling an objection to the State's final argument.

1. The *Cobarrubio* objection.

The court charged the jury on murder as follows:

... if you believe from the evidence beyond a reasonable doubt, that the defen-

dant, Rolland E. Lawson, on or about the 6th day of June, 1986, in the County of Travis, and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly cause the death of an individual, Elvin Leroy Pollock, by shooting him with a deadly weapon, to wit: a firearm, as alleged in the indictment, you will find the defendant guilty of the offense of murder and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty."

The charge then instructed the jury that if it had a reasonable doubt as to his guilt of murder, to consider whether the defendant was guilty of voluntary manslaughter. The charge instructed the jury on the law of voluntary manslaughter and defined "sudden passion" and "adequate cause." The charge on voluntary manslaughter repeated the murder charge, but added that "if you further believe from the evidence beyond a reasonable doubt that the defendant caused the death under the immediate influence of sudden passion arising from an adequate cause," to find the defendant guilty of voluntary manslaughter.

Lawson objected to the charge on the basis of *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Cr.App.1983). Specifically, he objected that once the evidence raised voluntary manslaughter, the burden was on the State to show the lack of sudden passion or adequate cause, and that the jury must be so instructed in the *murder* portion of the charge.

We agree that *Cobarrubio* requires the State to prove the lack of sudden passion and to so charge in the murder portion when the evidence raises voluntary manslaughter.[1] *Cobarrubio* places this burden on the State because "[w]ith the defensive issue of sudden passion deleted from the paragraph on murder and placed *only* in the voluntary manslaughter paragraph as it is here, there exists a decided likelihood that a jury would affirmatively answer the murder paragraph, never having considered the defensive issue of sudden passion...." 675 S.W.2d at 752.

In reviewing a *Cobarrubio* point, we are governed by the test set out in *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985). *Almanza* requires that we determine (1) if the charge contains error; and if it does, (2) whether there is harm. "If the error was the subject of a timely objection, then reversal is required if a review of the record indicates that the appellant suffered *some* harm as a result of the error. If there was no objection to the charge, then reversal is mandated only if the record reveals that the error caused egregious harm." *Jenkins v. State*, 740 S.W.2d 435, 441 (Tex.Cr.App.1987).

Of course, if the evidence does not raise the issue, a voluntary manslaughter charge is not required. *Luck v. State*, 588 S.W.2d 371 (Tex.Cr.App.1979). The defendant's own testimony "is sufficient to raise the issue ... and, once raised, the court is bound to submit the issue for jury determination without determining the weight or the truth or falsity of the testimony." *Medlock v. State*, 591 S.W.2d 484, 485 (Tex.

---

1. The charge approved in *Cobarrubio* is as follows:

> Now, if you find the evidence beyond a reasonable doubt that on or about the _____ day of ___, 19__, in _____ County, Texas, the defendant, AB, did intentionally or knowingly cause the death of an individual, CD by shooting him with a gun, and that the defendant, *in so acting, was not acting under the immediate influence of sudden passion arising from an adequate cause, then* you will find the defendant guilty of murder, as charged in the indictment.
>
>     *     *     *     *     *     *
>
> If you find from the evidence beyond a reasonable doubt that on or about the _____ day of _____, 19__ in _____ County, Texas, the defendant, AB, did intentionally or knowingly cause the death of an individual, CD, by shooting him with a gun, but you further find and believe from the facts and circumstances in evidence in the case that the defendant, in killing the deceased, if he did, acted under the immediate influence of sudden passion arising from an adequate cause, or if you have reasonable doubt as to whether he so acted under the immediate influence of sudden passion arising from adequate cause, then you will find the defendant guilty of voluntary manslaughter.

675 S.W.2d at 751–2.

Cr.App.1979). Tex.Pen.Code Ann. § 19.04(a) (1989) states: "A person commits [voluntary manslaughter] ... if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause."

During trial, Lawson testified that he was afraid of the deceased; that he was terrified when the deceased pointed a cocked and loaded gun at him; and that when the deceased grabbed Lawson's testicles, Lawson jabbed or pounded the deceased with the gun and it discharged. Lawson also answered the following questions his attorney asked:

Q: —I'm going to ask you again: Did you go to Lake Travis on June the 6th, 1986, with the intent of murdering Leroy Pollock?

A: No, sir, Mr. Higginbotham, I didn't. And if I could say, I think that's ridiculous. If anybody would investigate this they wouldn't think that.

Q: Did you at some point after you arrived on the lake formulate a plan to intentionally murder Leroy Pollock?

A: I never had a plan to murder Leroy Pollock; but Lake Travis certainly wouldn't be the place I'd go if I did.

Q: Did you have any intention of actually shooting Leroy Pollock even after the affray started?

A: It was not my intention that that gun go off. I've got to say this for the record, the man was causing me more pain than I ever had in my life. I don't know what would have happened if this had continued on a few seconds. My guess is I probably would have shot the man in the arm or something, but I had to stop him from hurting me. A man cannot stand that pain.

On appeal, the State asserts that Lawson's testimony did not raise the issue of voluntary manslaughter because Lawson denied intentionally or knowingly causing Pollock's death.[2]

Lawson's testimony is not the only evidence which might have raised the issue of voluntary manslaughter. The medical examiner who performed the autopsy stated that the gunshot wound was not an erratic shot, but a "contact-type gunshot wound ... surrounded by a blackened charred margin," and he concluded that "the muzzle of the gun at the time that the gun was fired was against the skin, against the head, of the decedent."

Intent can be inferred from words or actions, and despite Lawson's testimony that he did not intend to shoot Pollock, his actions raise the issue that he knowingly or intentionally killed Pollock. Furthermore, the wound was a contact shot, and Lawson went to great lengths to hide the body and to thwart the rescue search. Finally, we note that despite the State's argument on appeal that Lawson denied "intentionally or knowingly" causing Pollock's death, by finding Lawson guilty of murder, the jury had to determine that he in fact did knowingly and intentionally kill Pollock.[3] The issue raised with respect to the *Cobarrubio* error is not whether there was evidence of knowing and intentional murder, but whether there was evidence of sudden passion arising from adequate cause.

Section 19.04(b) defines "sudden passion" as "passion directly caused by and arising out of provocation by the individual killed

---

**2.** Section 6.03(a) of the Penal Code defines "intentionally" as:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

Section 6.03(b) defines "knowingly" as:

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when

he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

**3.** Although Lawson does not challenge the sufficiency of the evidence to support the murder conviction, this Court finds the evidence more than sufficient.

or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Section 19.04(c) defines "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Lawson testified that he was terrified and that Pollock was causing him "more pain than I ever had in my life." The Court of Criminal Appeals has held that a victim's insulting words and assault upon the defendant can raise the issue of sudden passion arising from adequate cause. *Ray v. State,* 515 S.W.2d 664 (Tex.Cr.App.1974). Lawson's testimony raised the issue of sudden passion arising from adequate cause.

The failure to submit the correct charge resulted in some harm to Lawson. We sustain his first point of error.

2. Lesser-included offense.

In his second point Lawson complains of the court's failure to include aggravated assault in the charge.

■ A charge on a lesser-included offense is required if the evidence meets the test enunciated in *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Cr.App.1981) (on motion for reh'g). First, the lesser included offense must be included in the proof necessary to establish the charged offense. Second, there must be some evidence that if defendant is guilty, he is guilty only of the lesser offense. *Id.* A charge on the lesser-included offense must be given if evidence *from any source* raises an issue that a lesser-included offense might have been committed. *Ormsby v. State,* 600 S.W.2d 782 (Tex.Cr.App.1980).[4]

■ Texas Pen.Code Ann. § 22.02(a) (1989) provides that a person commits aggravated assault if he commits assault as defined in Section 22.01 of this code and

causes "serious bodily injury." Under § 22.01(a)(1) a person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another...." "Serious bodily injury" is defined in § 1.07(a)(34) to include bodily injury that causes death. Since Pollock received "serious bodily injury" when Lawson jabbed him with the pistol, aggravated assault was a lesser-included offense of murder under Tex.Pen.Code Ann. § 19.02(a)(1). *See Dowden v. State,* 758 S.W.2d 264, 269 (Tex.Cr. App.1988).

The State argues that there was no proof establishing aggravated assault, specifically, there was no proof that Lawson intentionally or knowingly assaulted Pollock.[5] We disagree. Lawson testified that he "jabbed," "smacked," and "pounded" Pollock with a loaded pistol and that the second time he "jabbed" him, the gun discharged, killing Pollock. If believed, Lawson's testimony establishes that he knowingly and intentionally "assaulted" Pollock and that the "assault" resulted in a "serious bodily injury," *i.e.,* death. Accordingly, Lawson, if the jury believed him, could have been found to have committed an "aggravated assault." This met the first prong of the *Royster* test.

This testimony also met the second prong of the *Royster* test: it was some evidence that if Lawson were guilty, he was guilty only of the lesser offense. "A charge on the offense of aggravated assault would be required only if testimony was introduced ... indicating a lack of *intent* on the part of appellant to kill the deceased. *See Curtis v. State,* 573 S.W.2d 219, 223 (Tex.Cr. App.1978)." *Dowden,* 758 S.W.2d 264, 269; *see also Schoelman v. State,* 644 S.W.2d 727, 734 (Tex.Cr.App.1983); *Castillo v. State,* 686 S.W.2d 377, 378 (Tex.App.1985, no pet.).

When questioned by his attorney, Lawson testified that he did not intend to kill or shoot Pollock. His testimony distinguishes

---

4. The State seeks to avoid this rule by arguing that here "appellant's own self-serving testimony is the only source for sowing possible issues of lesser-included offenses." We agree. However, such testimony is "evidence from any source" and raises the issue of a lesser-included offense.

5. Lawson waived "recklessly" causing an assault by failing to request it. He requested only "intentionally or knowingly" causing serious bodily injury.

**500**

this case from *Harrell v. State*, 659 S.W.2d 825, 827 (Tex.Cr.App.1983). Harrell, like Lawson, was convicted of "knowing and intentional" murder under § 19.02(a)(1), and complained on appeal that he was entitled to the requested aggravated assault charge. In upholding the murder conviction, the Court of Criminal Appeals determined that Harrell was not entitled to a charge on aggravated assault because he had testified that he *intended* to shoot the deceased in the arm. "Because appellant's testimony showed him guilty of murder under § 19.02(a)(2) [6] [even though he was neither indicted nor charged under this section], it did not constitute evidence that if guilty he was guilty of aggravated assault." *Id.*

Harrell admitted that he intended to cause serious bodily injury; Lawson claimed just the opposite. Lawson met the second prong of *Royster;* Harrell did not.

■ In light of *Dowden,* the court should have submitted the requested aggravated assault charge to the jury, which would have been free to believe or reject Lawson's testimony. Because Lawson made a timely request, the court's failure to submit the charge resulted in harm to Lawson. *Hayes v. State,* 728 S.W.2d 804, 810 (Tex.Cr.App.1987); *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985). We sustain Lawson's second point, and need not address his remaining points.

## CONCLUSION

The judgment of the trial court is reversed and the cause is remanded for new trial.

Reversed and Remanded.

---

**6.** Section 19.02(a)(2) states: "A person commits an offense if he ... intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual."