**Opinion issued November 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NOS. 01-14-00389-CR**
**01-14-00390-CR**

———————————

**JOHNATHAN RENARD CASTANEDA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1350501 and 1350815**

---

**MEMORANDUM OPINION**

A jury convicted Johnathan Renard Castaneda of aggravated sexual assault

and murder. Castaneda pleaded true to an enhancement paragraph, and the court

assessed his punishment at a mandatory life sentence for the aggravated sexual

assault and 45 years in prison for the murder. On appeal, Castaneda contends that legally insufficient evidence supports his conviction for aggravated sexual assault with a deadly weapon. He further contends that the trial court erred: (1) when it denied his requests for lesser-included offense jury instructions for aggravated assault and manslaughter; (2) in failing to instruct the jury that the State bears the burden of disproving a self-defense claim; and (3) in failing to hold an evidentiary hearing on his motion for a new trial. Finally, he contends that the DNA court cost assessed against him is an unconstitutional tax. We affirm.

## Background

The State charged Castaneda with the murder of Keith Armstrong and the aggravated sexual assault of "P. Asberry."[1] Armstrong lived down the street from Castaneda's grandfather. Castaneda frequently visited his grandfather and had interacted with Armstrong a few times. Armstrong rented rooms in his home to several people, including Asberry.

Castaneda testified that, in June 2013, he visited Armstrong's house and had sex with Asberry, in exchange for giving her $20 worth of crack cocaine. Armstrong was to have received $30 or $60 as well, but Castaneda left without seeing him or providing the money. According to Castaneda, "I cheated him out of his money. I jacked him."

---

[1]     The complainant is identified by a pseudonym to protect her anonymity.

2

Later that day, Castaneda went back to Armstrong's house. Castaneda explained to Armstrong that he was going to pay Armstrong as soon as he located some wholesale crack cocaine. Castaneda left again. Later, he passed in front of Armstrong's house on his way to a bus stop. As Castaneda walked by, Armstrong ordered him into the house at gunpoint. Armstrong was angry and accused Castaneda of taking the keys to Armstrong's truck, which Castaneda denied. Armstrong also ordered the house's other occupants into the home.

Armstrong searched for the keys for approximately 30 minutes. He then held the gun to Asberry's head and demanded the keys. She told him she did not have the keys. While still holding the gun, Armstrong approached Castaneda and asked for the keys. Castaneda hit Armstrong. He knocked him to the couch and then to the floor. Asberry tried to intervene and Castaneda hit her. The other people in the house also joined the fight. After hitting Armstrong and knocking him to the ground, Castaneda then repeatedly kicked Armstrong in the face while Armstrong lay on the ground unconscious. He then beat him repeatedly in the face and the torso with a pipe.

Castaneda testified in his own defense. He admitted that he kicked Armstrong, stating that he was trying to keep him down. He beat Armstrong in the head with the pipe "like five times." Castaneda agreed that he continued to hit Armstrong with the pipe even though Armstrong had stopped moving after the

3

second hit. He also admitted that he told police after the incident that he also had hit Armstrong with the gun. At trial, he denied hitting Armstrong with the gun.

Castaneda hit another occupant of the house with a chair and broke her arm, but testified that "he didn't mean to break her arm." He dragged her to the street by the ankles and left her by a storm drain.

Asberry fled to the bathroom to hide. She heard Castaneda struggle with the others in the house. Then Castaneda kicked in the bathroom door, still holding the pipe, and ordered her to "suck my dick." After performing oral sex, Castaneda ordered her to turn around and then penetrated her vaginally and anally. Castaneda denied sexually assaulting Asberry, but he agreed that he had told police that he had hit Asberry with "a pole" and kicked down the bathroom door.

Police arrived shortly after the fight and the assault. They found Armstrong dead on the floor. They observed Armstrong's home destroyed and blood everywhere. Officers testified that the house was "all torn up," "extremely bloody," "looked like a tornado had gone through," and that "there was blood on the walls [and] blood on the carpet." Armstrong was beaten to an unrecognizable point with his face "mashed in," many teeth missing, and his head completely misshapen from skull and facial fractures. He also had broken ribs, multiple neck fractures, and a lacerated liver.

4

## I.     Legal Sufficiency

Castaneda contends that the evidence is not legally sufficient to support a conviction of aggravated sexual assault.  Specifically, he contends that there was no evidence to show that he used or exhibited a deadly weapon during the assault.

*Standard of Review*

Under the standard of review for legal sufficiency challenges, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We determine whether necessary inferences are reasonable in light of the combined and cumulative force of all the evidence, viewed in the light most favorable to the verdict.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  We presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.  *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.  We additionally defer to the factfinder's evaluation of the credibility and weight of the evidence.  *Williams*, 235 S.W.3d at 750.  The standard of review is the same for

circumstantial and direct evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

The statutory elements of aggravated sexual assault are: A person commits aggravated sexual assault if he (1) intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means (2) without that person's consent and (3) uses or exhibits a deadly weapon in the course of the same criminal episode. TEX. PENAL CODE ANN. § 22.021 (West 2011). As set forth in the State's indictment, the State was required to show Castaneda used and exhibited a deadly weapon.

It is the deadly weapon finding that Castaneda challenges on appeal. For a jury to find that the defendant used or exhibited a deadly weapon there must be evidence that (1) the object meets the statutory definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the felony crime; and (3) other people were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Castaneda contends there was no evidence to prove that he used or exhibited a deadly weapon, nor that Asberry was in any actual danger from it.

In *Patterson v. State*, the Texas Court of Criminal Appeals held that to "exhibit" a deadly weapon, a defendant need only to have consciously displayed it during the commission of the required felony offense. *Patterson v. State*, 769

S.W.2d 938, 941 (Tex. Crim. App. 1989). In *Plummer*, the court further explained that, for violent offenses, the verb "exhibits" implicitly contains an element of "facilitation;" thus, one can "exhibit," or consciously display, a deadly weapon, without overtly using it to harm or threaten, because its intimidation value assists in the commission of the felony. *Plummer v. State*, 410 S.W.3d 855, 862 (Tex. Crim. App. 2013). In a "nonviolent offense that does not involve harm or the threat of harm, the presence of a deadly weapon does not necessarily further or facilitate the offense." *Id.* Aggravated sexual assault is a violent offense. Accordingly, a jury reasonably could have concluded that Castaneda displayed the pipe to intimidate Asberry and facilitate his commission of a sexual assault. *See Plummer*, 410 S.W.3d at 862.

Castaneda observes that the jury heard conflicting testimony as to whether Castaneda held the metal pipe during the assault. Asberry testified Castaneda held the metal pipe while he kicked the bathroom door down and when he ordered her to "suck my dick." After she complied, he put the metal pipe on a table within arm's reach. In contrast, Castaneda denied that he ever possessed the metal pipe. We defer to the jury's evaluation of the credibility and weight of this conflicting evidence. *See Williams*, 235 S.W.3d at 750. We presume that the jury resolved this conflicting testimony in favor of the verdict. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. Accordingly, we hold that legally

sufficient evidence supports the jury's determination that Castaneda used or exhibited a deadly weapon during the commission of a sexual assault.

Castaneda further contends that insufficient evidence demonstrates that Asberry was endangered by the pipe. But Asberry testified that she had just witnessed Castaneda beat Armstrong to death with the pipe immediately before he assaulted her. Castaneda also had previously hit Asberry with the pipe when she attempted to intervene in his altercation with Armstrong. Viewing the evidence in the light most favorable to the verdict, the jury could have rationally found beyond a reasonable doubt that Asberry was put in actual danger. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Williams*, 235 S.W.3d at 750; *Drichas*, 175 S.W.3d at 798. Accordingly, we hold that there was legally sufficient evidence to support the jury's finding that Castaneda committed aggravated sexual assault.

## II.    Jury Charge Error

Castaneda contends that the trial court erred in its instructions to the jury when it denied his request to charge the jury on the lesser-included offenses of aggravated assault and manslaughter. Castaneda further contends the trial court erred when it did not instruct the jury on the burden of proof on self-defense claims, causing him egregious harm.

*Standard of Review*

When reviewing a trial court's jury charge, we first determine if there was an error in the charge. *Nguyen v. State*, 811 S.W.2d 165, 167 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd). "If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (emphasis in original). If the defendant did not object at trial to the error in the charge, he must demonstrate that the error was "fundamental" and that he suffered "egregious harm." *Id.* Egregious harm results from errors that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005).

## A. Lesser-Included Offenses

With respect to his conviction for murder, Castaneda contends that the trial court erred when it failed to instruct the jury on the lesser-included offenses of manslaughter and aggravated assault. We use a two-pronged test in determining whether a defendant is entitled to an instruction on a lesser-included offense. *See Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006); *Salinas v.*

*State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). The first prong is to determine whether an offense is a lesser-included offense of the charged offense. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); *Salinas*, 163 S.W.3d at 741. This determination is a question of law and is not based on the evidence to be produced at trial. *Hall*, 225 S.W.3d at 535. The Code of Criminal Procedure defines lesser-included offenses in terms of the offense charged. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005). A lesser-included offense is established when

> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006); *Hayward*, 158 S.W.3d at 478.

Under the second prong, we determine whether some evidence exists that would permit a rational jury to find that the defendant is guilty of the lesser offense but is not guilty of the greater. *Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002). We review all of the evidence presented at trial in order to make this determination. *Rousseau v.*

*State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). If the evidence raises the issue of a lesser-included offense, the trial court must charge the jury based on that evidence, "whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted." *Id.* at 672 (quoting *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)). But some affirmative evidence must support the lesser-included offense; it is not enough that a jury might have disbelieved a witness's testimony. *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Thus, there must be some evidence directly germane to the lesser-included offense for a jury to consider before an instruction on the lesser offense is warranted. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012); *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner*, 956 S.W.2d at 543). We review any error in refusing to instruct the jury on a lesser-included offense for harm. *See Saunders v. State*, 913 S.W.2d 564, 569–74 (Tex. Crim. App. 1995).

**1. Manslaughter**

In this case, Castaneda was charged with murder under two definitions of the Penal Code: (1) a person commits the offense of murder if he "intentionally or knowingly causes the death of an individual;" or (2) "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (West

11

2011). A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03(b) (West 2011). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c).

Castaneda requested a jury instruction on the lesser-included offense of manslaughter. A person commits manslaughter if "he recklessly causes the death of an individual." TEX. PENAL CODE ANN. §19.04. The State concedes that manslaughter is a lesser-included offense in this case because it differs from the offense charged only with respect to the defendant's level of intent, requiring a lesser culpable mental state. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09; *Hayward*, 158 S.W.3d at 478.

We consider the entire record and determine whether some evidence exists that would permit a rational jury to find that the defendant is guilty of the lesser offense but is not guilty of the greater. *Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Feldman*, 71 S.W.3d at 750; *Rousseau*, 855 S.W.2d at 673.

At trial, Castaneda testified that he did not intend to kill Armstrong, and also agreed that it was "not his intention during that evening to have people sustain the kind of injuries and things that occurred out there." Because Castaneda expressly denied any intent to kill Armstrong and denied any intent that "to have people

sustain the kind of injuries and things that occurred here," he raised some evidence to support an instruction on manslaughter as a lesser-included offense. *See Rousseau*, 855 S.W.2d at 672.

But Castaneda's own testimony elsewhere in the record negates recklessness. With respect to Armstrong, Castaneda admitted to going "above and beyond what was immediately necessary":

Q: And the whole beating, right, kind of messed up, wasn't it?

A: Yes, it was. I shouldn't – I admit I shouldn't have went and killed the man. That was never my intention of doing.

Q. If he wasn't moving that second time you hit him with whatever it was, you probably didn't need to hit him that third or fourth or fifth time, did you?

A. Yeah, I agree.

Q. That was a little bit too much, wasn't it?

A. Yes, sir.

Q. Kind of went above and beyond what was immediately necessary, didn't it?

A. Yes, sir. Yes, sir. Looking back at it now, yes, sir, it did.

Q. Kind of looking back at it how an ordinary person would look at it, right?

A. Yes, sir.

Castaneda also admitted that that he continued to hit Armstrong with the pipe after Armstrong was on the ground and had stopped moving. The State

13

proffered uncontradicted evidence that Armstrong's house was "all torn up," "extremely bloody," "like a tornado had gone through," and with "blood on the walls [and] blood on the carpet." Armstrong was beaten to an unrecognizable point with his face "mashed in," many teeth missing, and his head completely misshapen from skull and facial fractures. He also had broken ribs, multiple neck fractures and a lacerated liver.

Having denied any intent to kill, Castaneda nevertheless admitted that he intentionally hit Armstrong in the head multiple times with a blunt object, beyond what was necessary and after Armstrong stopped moving. He beat Armstrong's skull to a point that it was misshapen and Armstrong was unrecognizable, and continued to strike Armstrong on his torso, fracturing other bones in Armstrong's body and lacerating Armstrong's liver. Castaneda's admission that what he did was "messed up" and went "further than necessary" is evidence that he intended to cause serious bodily injury. At trial, Castaneda testified that he acted in self-defense, i.e., that he intentionally committed these acts but was justified in doing so. Despite his testimony that he did not intend to kill Armstrong, Castaneda's own testimony elsewhere in the record acknowledges his intent to cause serious bodily injury. The evidence is undisputed that he also committed acts clearly dangerous to human life that caused the death of another. *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011).

14

Accordingly, because Castaneda negated recklessness with his own testimony acknowledging that he intended to commit serious bodily injury, and when coupled with acts dangerous to human life, such testimony establishes murder as Section 19.02(b)(2) of the Penal Code defines it, we hold that any error that the trial court committed in refusing to submit manslaughter as a lesser included offense to murder was harmless. *See id.*; *Saunders*, 913 S.W.2d at 574 ("As with any purported errors in the jury charge, harm [in refusing to submit a lesser offense] must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.") (internal quotation marks omitted). Nothing else in the closing argument or other evidence adduced at trial pointed to a lack of intent.

Castaneda further cites to *Westbrook v. State* to contend that the trial court should have instructed the jury on manslaughter because there is evidence of sudden passion. *Westbrook v. State*, 846 S.W.2d 155, 158 (Tex. App.—Fort Worth 1993, no pet.). Sudden passion, however, is not an element of manslaughter. *See* TEX. PENAL CODE ANN. §19.04. Rather, it is a basis for mitigation at sentencing. TEX. PENAL CODE ANN. §19.02(d). Because Castaneda elected to be sentenced by the court, no jury instruction on mitigation for sudden passion was necessary.

## 2. Aggravated Assault

Castaneda also requested a jury instruction on the offense of aggravated assault as a lesser-included offense. A person commits assault when he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011). An assault becomes an aggravated assault if the offender additionally "causes serious bodily injury to another . . . ; or . . . uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a). The State concedes that aggravated assault is an available lesser-included offense in this case. *See also* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006); *Hayward*, 158 S.W.3d at 478.

Turning to the second prong, we again consider the entire record and determine whether some evidence exists that would permit a rational jury to find that the defendant is guilty of the lesser offense but is not guilty of the greater. *Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Feldman*, 71 S.W.3d at 750; *Rousseau*, 855 S.W.2d at 673.

We conclude that it does not. *See Flores v. State*, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008) ("a defendant is not entitled to a jury instruction on a lesser-included offense if the evidence on which the defendant is relying raises another offense that 'lies between' the requested and charged offenses"); *Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999) (defendant charged with

16

murder was not entitled to lesser-included offense of aggravated assault because "there was no evidence that [the defendant] was guilty only of anything less than some form of murder," as the evidence upon which he relied showed at least a murder).

In *Forest v. State*, the defendant was charged with murder and requested an instruction on the lesser offense of aggravated assault. *See Forest*, 989 S.W.2d at 368. The Court of Criminal Appeals held that, because the evidence showed that the defendant was at least guilty of intent to commit serious bodily injury, the trial court did not err in refusing to submit aggravated assault as a lesser-included offense. *See id.* Notably, the Court of Criminal Appeals observed that the defendant's own testimony demonstrated this intent. *Id.*; *see also Jackson v. State*, 992 S.W.2d 469, 475 (Tex. Crim. App. 1999) ("A murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide."); *Hernandez v. State*, 416 S.W.3d 522, 527 (Tex. App.—Eastland 2013, pet. ref'd) (upholding the denial of a lesser-included offense instruction for aggravated assault when the murder defendant beat the decedent to death with a baseball bat after decedent fell to the ground).

We conclude that the present facts are similar to *Forest* and *Hernandez*. Although Castaneda denied any intent to commit murder, he did not deny that he

intended to cause the serious bodily injuries that lead to Armstrong's death. He admitted that his acts were "messed up," that he should not have continued to beat Armstrong, and that he went beyond what was necessary and reasonable. Accordingly, we hold that the trial court did not abuse its discretion in refusing to submit aggravated assault as a lesser included offense.

Castaneda cites *Lawson v. State* to support his contention that the trial court erred in denying a charge for the lesser-included offense of aggravated assault, because he contends that the evidence raises a fact issue as to whether he committed only aggravated assault and not murder or manslaughter. *Lawson v. State*, 775 S.W.2d 495, 499–500 (Tex. App.—Austin 1989, pet. ref'd). *Lawson*, however, is distinguishable. In that case, the defendant testified at trial that he struck the complainant with a pistol and the gun discharged, accidentally killing the complainant, not because he intended to pull the trigger. *Id.* Unlike the facts in *Lawson*, Castaneda cites no evidence adduced at trial that he did not intend to hit Armstrong with the pipe or that he accidentally hit him.

Because Castaneda did not raise any evidence from which the jury could conclude that he did not intend to cause serious bodily injury leading to death, we hold that the trial court did not err when it denied Castaneda's request for a jury instruction on aggravated assault. *Forest*, 989 S.W.2d at 368; *Hernandez*, 416 S.W.3d at 527.

**B. Self-Defense Instruction**

The trial court instructed the jury on self-defense: "If you find from the evidence beyond a reasonable doubt that the defendant, Johnathan Renard Castaneda, did cause the death of Baron Keith Armstrong . . . under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself . . . then you should acquit the defendant on the grounds of self-defense." The application paragraph of the jury charge on self-defense further stated "if you have a reasonable doubt as to whether or not the defendant was acting in self-defense . . . , then you should give the defendant the benefit of that doubt and say by your verdict, not guilty."

Castaneda contends the jury charge on self-defense was confusing and failed to properly identify who bore the burden of proof. We first examine whether there is error in the charge. *See Nguyen*, 811 S.W.2d at 167.

The trial judge must deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2006). Under a self-defense claim, the defendant has the initial burden of producing some evidence to justify submission of a self-defense instruction. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)). The State must then persuade the jury beyond a reasonable doubt the defendant did not act in self-

defense. *Id.* (citing *Saxton*, 804 S.W.2d at 913–14). A jury finding that the defendant is guilty is an implicit finding against the defensive theory. *Id.*

Castaneda cites to *Barrera v. State* for the proposition that a trial court errs when submitting a jury instruction that fails to apply the law of self-defense to the facts of the case and to instruct the jury to acquit if they held a reasonable doubt about self-defense. *Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998). Castaneda argues that the trial court erred in its jury instructions because jury could have understood the application paragraph to mean that Castaneda bore the burden of proving self-defense beyond a reasonable doubt when it started "if you find from the evidence beyond a reasonable doubt . . . ."

We rejected a similar contention in *Ryser v. State*. *Ryser v. State*, 453 S.W.3d 17, 29 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). In that case, the jury was instructed: "[I]f you have a reasonable doubt as to whether or not the defendant was justified in using force . . . then you should give the defendant the benefit of that doubt and say by your verdict not guilty." *Ryser*, 453 S.W.3d at 32. We held that, in light of this language, the jury charge did not "improperly relieve the State of its burden of proof." *Id.*

Additionally, other portions of the charge instructed the jury on the State's burden of proof, providing, "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant. . . . The

20

prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant." Accordingly, we hold that the jury charge did not improperly shift the burden of proof on self-defense. *See Zuliani*, 97 S.W.3d at 594; *Ryser*, 453 S.W.3d at 32; *Nguyen*, 811 S.W.2d at 167.

Castaneda further contends the application paragraph was too long and confusing, citing *Reeves v. State*, in which the Court of Criminal Appeals found harmful error when an erroneous jury instruction was embedded in a lengthy and confusing jury charge. 420 S.W.3d 812, 818 (Tex. Crim. App. 2013). In *Reeves*, the State conceded charge error, and the jury charge consisted of two application paragraphs, one consisting of a 156-word sentence and one consisting of a 125-word sentence, located within 6 pages of legal "argle-bargle" instruction on self-defense. *Id.* at 817. While the jury charge in this case contained a 219-word sentence application paragraph, the self-defense charge consisted of a straight-forward abstract section defining terms and two application paragraphs; thus, *Reeves* is inapposite.

## III. Evidentiary Hearing on a Motion for New Trial

Castaneda contends the court improperly denied him an evidentiary hearing on his motion for a new trial, in which he claimed ineffective assistance of counsel for failure to provide mitigating evidence during sentencing. We review a trial

21

court's denial of a motion for new trial under an abuse of discretion standard. *Lucero v. State*, 246 S.W.3d 86, 94 (Tex. Crim. App. 2008). A trial court "abuses [its] discretion in failing to hold a hearing if the motion and accompanying affidavits: (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009) (citing *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009)). "[A] hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record." *Smith*, 286 S.W.3d at 338 (emphasis omitted) (quoting *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)).

A defendant is entitled to a hearing on a motion for new trial due to ineffective assistance of counsel if he alleges sufficient facts from which a trial court could reasonably conclude that (1) counsel failed to act as a reasonably competent attorney; and (2) there is a reasonable likelihood the outcome of the trial would have been different without counsel's error. *Smith*, 286 S.W.3d at 340–41.

When a judge who sentences a defendant also denies the defendant's hearing on a motion for new trial, we presume that the judge knew whether additional testimony produced in affidavits would have influenced his normative sentencing judgment. *Id.* at 344–345. Only the trial judge could have known what factors he took into consideration when he assessed the punishment, and only he would know

22

how additional testimony might have affected his assessment. *Id.* at 344. The trial judge may conclude, without conducting a hearing, that the appellant suffered no prejudice from any deficiency of the trial counsel with respect to the punishment phase. *Id.* at 345.

Here, the judge who sentenced Castaneda is the judge who signed the presentment of the motion for a new trial. The evidence provided in the motion for a new trial included affidavits from Castaneda's friends and family. Consistent with *Smith,* the judge could have determined without a hearing that the alleged deficiencies of trial counsel by failing to provide this evidence at the punishment phase would not have affected his sentencing decision. *See id.* at 344–45.

Castaneda cites *Milburn v. State*, 15 S.W.3d 267 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd), and *Moore v. State*, 983 S.W.2d 15 (Tex. App.—Houston [14th Dist.] 1998, no pet.), in which the courts of appeals have held that failure to investigate or present witnesses during the punishment phase amounted to ineffective assistance of counsel. But both of these cases examined sentencing by a jury, not a trial judge, and thus are inapposite here. *Milburn*, 15 S.W.3d at 270; *Moore*, 983 S.W.2d at 22, 24.

Further, we need not consider Castaneda's complaint because he waived his objection. An objection on substantive grounds does not preserve error as to the trial court's denial of a hearing or inquiry where the objecting party did not request

23

the hearing. *McGinn v. State*, 961 S.W.2d 161, 166 (Tex. Crim. App. 1998); *see also Rodas-Rivera v. State*, No. 01-12-00711-CR, 2014 WL 50809, at *3 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (mem. op., not designated for publication). Castaneda did not request an evidentiary hearing in his motion for new trial. Thus, he cannot complain about the trial court's denial of a hearing.

We hold that the trial court did not err in denying an evidentiary hearing on Castaneda's motion for new trial. *See Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 344–45; *Lucero*, 246 S.W.3d at 94.

## IV. Court Costs

Lastly, Castaneda complains that the trial court improperly assessed a DNA testing fee as a court cost because such an assessment is unconstitutional.

*Standard of Review*

Determining whether a statute is facially constitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). In our review, we "presume that the statute is valid and that the legislature was neither unreasonable nor arbitrary in enacting it." *Curry v. State*, 186 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). If the statute may be construed in two different ways, and one construction sustains the validity of the statute, we must

use the construction that sustains the statute's validity. *Maloney*, 294 S.W.3d at 626. The party who challenges the statute bears the burden of establishing that it is unconstitutional. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013).

*Analysis*

Article 102.020(a)(1) of the Code of Criminal Procedure, "Costs Related to DNA Testing," provides that a defendant convicted of certain offenses, including aggravated sexual assault, "shall pay as a cost of court: $250 [upon] conviction . . . ." TEX. CODE CRIM. PROC. ANN. art. 102.020(a)(1) (West 2006); TEX. GOV'T CODE ANN. § 411.1471 (West 2012). Thirty-five percent of the revenue received from the fee is dedicated to the state highway fund, while sixty-five percent of the revenue is dedicated to the general revenue fund of the criminal justice planning account. TEX. CODE CRIM. PROC. ANN. art. 102.020(h).

Castaneda contends the "DNA Testing Fee" assessed against him is an unconstitutional tax. The Court of Criminal Appeals, however, has upheld the fee as facially constitutional. *Peraza v. State*, 467 S.W.3d 508, 517 (Tex. Crim. App. 2015); *see also Rosseau*, 396 S.W.3d at 557 (Tex. Crim. App. 2013) ("[T]o prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances."). The court conceded that the Texas Constitution only allows the assessment of court costs for "legitimate criminal justice purposes," potentially permitting as-applied challenges to the

25

statute. *Peraza*, 467 S.W.3d at 517. However, Castaneda does not allege that the fees he paid were used improperly. We therefore uphold the trial court's imposition of the fee. *See id.*

## Conclusion

We hold that sufficient evidence supports the jury's verdict finding. We further hold that the trial court did not err in instructing the jury or denying Castaneda an evidentiary hearing. We also uphold the trial court's assessment of court costs for DNA testing. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Radack, Bland, and Huddle.

Do not publish. *See* TEX. R. APP. P. 47.2(b).